## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROBERT WALTER O'DONNELL,
      Petitioner,                               Civil Action No. 1:03-cv-828

      vs.

PAT HURLEY, WARDEN,               **REPORT AND**
      Respondent.                  **RECOMMENDATION**
                                        (Beckwith, J.; Hogan, M.J.)

Petitioner, a state prisoner, brings this case *pro se* seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. This matter is before the Court upon the petition (Doc. 1), respondent's return of writ and exhibits thereto (Docs. 8, 9), petitioner's traverse (Doc. 18), petitioner's amended petition (Doc. 26), respondent's supplemental return of writ (Doc. 27), petitioner's traverse to the supplemental return of writ (Doc. 30), respondent's supplemental memorandum in support of the supplemental return of writ (Doc. 31), and petitioner's supplemental memorandum in opposition thereto. (Doc. 34).

## I.    FACTS

This case involves the following facts, as summarized by the Fourth District Ohio Court of Appeals:

> On August 3, 1997, Jim and Annette Stevens returned to their home in Jackson County from a boating excursion with appellant and his wife, Betty. As they walked down the steps to their home, two men wearing masks with "FBI" on them approached the Stevenses. The men showed Jim what Annette believed to be badges and a warrant. The "FBI agents" had a long gun and a handgun pointed at the Stevenses while they entered the house. Annette and Jim were handcuffed and duct tape was placed over their eyes. The "FBI agents" stated that the Stevenses were under arrest and the agents searched their home.
>
> After a short period of time, the Stevenses were taken out of the house and placed in the back seat of a vehicle. They were then driven somewhere and removed

from the vehicle. Jim and Annette were separated and each was beaten, tortured and drugged. They were then taken to a barn and again separated, beaten and tortured. Their assailants indicated that they wanted money and would torture Jim and Annette until one of them told the assailants where some money was located.

Eventually, Jim Stevens told the assailants that the money they were seeking was located in a storage bin and the assailants stole the money. After several more hours of torture, Jim and Annette were given some pills to take. They were then left in their truck a short distance from their home.

During the trial, the state conceded that appellant was not present when the Stevenses' home was burglarized and they were taken away. Rather, the state argued that appellant was guilty of complicity to burglary and complicity to kidnapping.[1]  Specifically, the state alleged that appellant suggested the kidnapping, provided the assailants with information regarding the victims, and was present for some period of time at the location where the victims were being held. The state called several witnesses, including others involved with the Stevenses' kidnapping, to prove its case. Appellant maintained that he never suggested the kidnapping and, while he may have been present during some discussions regarding the kidnapping, he was not a participant in the planning.

(Doc. 8, Exh. 12).

## II.  PROCEDURAL HISTORY

Petitioner was indicted by the Scioto County Grand Jury in January 2000 on one count of

Aggravated Burglary and two counts of Kidnapping, each with a firearm specification. (Doc. 8,

Exh. 1).  These charges were the result of petitioner's complicity with others to commit these

---

[1]R.C. 2923.03, which defines complicity, states:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
(1) Solicit or procure another to commit the offense;
(2) Aid or abet another in committing the offense;
(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
(4) Cause an innocent or irresponsible person to commit the offense.
* * *
(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

2

offenses.  Pursuant to Ohio Rev. Code 2923.03[2], petitioner was charged as a principal offender.

Pursuant to petitioner's request, the prosecutor filed a Bill of Particulars. (Doc. 8, Exh. 2).  Petitioner filed a Motion for Specificity in Bill of Particulars or Otherwise Dismiss the Indictment (Doc. 8, Exh. 3), and a Motion in Limine requesting the court to prohibit any reference to his conviction on an unrelated kidnapping charge. (Doc. 8, Exh. 4).  The court denied both motions. (Doc. 8, Exh. 7).  The case proceeded to jury trial.  On May 24, 2000, petitioner filed a Motion to Instruct the jury on the elements of abduction. (Doc. 8, Exh. 8).  The motion was denied on the record. (Doc. 9, Tr. 392).  The jury found petitioner guilty on all counts.  In a Judgment Entry filed on May 25, 2000, petitioner was sentenced to a term of nine years incarceration on each of the three counts to be served concurrently with each other.  An additional mandatory prison term of one year was imposed for the firearm specification, to be served prior to any other time. (Doc. 8, Exh. 9).  After the close of the State's case, petitioner moved for acquittal on the record pursuant to Criminal Rule 29.  The motion was overruled. (Doc. 9, Tr. 318-323).

Represented by the same attorney, petitioner filed a timely appeal of his conviction and sentence.  He asserted the following assignments of error:

I. THE COURT ERRED IN NOT GRANTING APPELLANT-DEFENDANT'S MOTION FOR SPECIFICITY IN THE BILL OF PARTICULARS OR OTHERWISE DISMISS THE COMPLAINT.

II. THE COURT ERRED IN NOT GRANTING APPELLANT-DEFENDANT'S MOTION IN LIMINE.

III. THE COURT ERRED IN NOT GRANTING APPELLANT-DEFENDANT'S MOTION TO ACQUIT AT THE COMPLETION OF THE STATE'S CASE.

---

[2]Section 2923.03(F) provides that a charge of complicity may be stated in terms of this (the complicity) section or in terms of the principal offense.

IV. THE TRIAL COURT ERRED IN NOT GRANTING
APPELLANT-DEFENDANT'S MOTION FOR JURY INSTRUCTIONS ON
ABDUCTION.

V. THE CONVICTION OF APPELLANT-DEFENDANT WAS AGAINST THE
MANIFEST WEIGHT OF THE EVIDENCE.

(Doc. 8, Exh. 10).  On May 21, 2001, the appellate court affirmed the judgment of the trial court.

(Doc. 8, Exh. 12).

Petitioner did not perfect a timely appeal to the Ohio Supreme Court.  Petitioner's appeal

to the Ohio Supreme Court was received on July 6, 2001, one day after the deadline of July 5,

2001. (Doc. 18, Exh. B).  Petitioner alleges that he his handed his appeal documents over to the

prison mailroom on June 29, 2001 for mailing. (Doc. 18, Exh. A).  It appears the mailroom staff

was unaware of an increase in postage rates for certified mail.  Petitioner's mail was returned by

the U.S. postal service for this reason, which ultimately delayed the receipt of his appeal by the

Ohio Supreme Court. (Doc. 18, Exh. C).  On August 28, 2001, petitioner filed a pro se Motion to

File a Delayed Appeal explaining the circumstances of his delayed appeal to the Ohio Supreme

Court. (Doc. 8, Exh. 13).  On October 19, 2001, petitioner's motion for delayed appeal was

denied and the case dismissed. (Doc. 8, Exh. 14).

Meanwhile, on August 10, 2001, petitioner filed an Application for Reopening Appeal

pursuant to Appellate Rule 26(B) in the Fourth District Court of Appeals. (Doc. 8, Exh. 15).  On

December 21, 2001, the Court of Appeals denied the application to reopen finding no indication

of deficient performance by counsel or prejudice to petitioner. (Doc. 8, Exh. 16).  Petitioner

appealed this decision to the Ohio Supreme Court on January 31, 2002.  In his memorandum in

support of jurisdiction, petitioner presented the following propositions of law:

I.  A criminal defendant's constitutional rights under the Sixth and Fourteenth

4

Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution are violated when appellate counsel fails to raise obvious, reversible errors on direct appeal.

II.  When a trial court gives a complicity instruction it must instruct the jury that a defendant is not guilty of complicity unless he or she acts "with the kind of culpability required of the offense."  R.C. §2923.03 (A)(2)(3) and (E).

III.  A defendant's right to due process is violated when the trial court gives an instruction that permits the jury to find the defendant guilty without finding that the defendant has committed each element of the offenses beyond a reasonable doubt.

IV.  Trial counsel is ineffective when he fails to object to a complicity instruction that directs the jury to find a defendant guilty without a finding that the defendant acted "with the kind of  culpability required for the commission of the offenses." R.C. §2923.03 (A)(2)(3).

(Doc. 8, Exh. 17).  The Ohio Supreme Court dismissed the appeal on April 3, 2002 as not involving any substantial constitutional question. (Doc. 8, Exh. 18).

On November 18, 2002, petitioner filed a Petition for Writ of Habeas Corpus in this Court raising the following grounds for relief:

GROUND ONE:  Petitioner was deprived of his right to a fair trial and due process of law under the fifth, sixth and fourteenth [amendments] because the Trial Court permitted, over objections, the introduction of irrelevant and immaterial "other acts" evidence as propensity and character evidence as proof of his guilt that was so inflammatory and prejudicial in nature that petitioner's trial was irreparable and unconstitutionally damaged as a result thereof.

GROUND 2: When a Trial Court gives a complicity instruction it must instruct the jury that a defendant is not guilty of complicity unless he or she acts "with the kind of culpability required of the offense."  R.C. §2923.03 (A)(2)(3) and (E).

GROUND 3:  The verdict that O'Donnell is guilty of complicity to one count of aggravated burglary and two counts of kidnapping with a firearm specification is against the sufficiency of the evidence presented at trial.

GROUND 4: Trial counsel is ineffective when he fails to object to a complicity

5

instruction that directs the jury to find a defendant guilty without a finding that the defendant acted with the kind of culpability required for the commission of the offenses.

On August 19, 2004, petitioner filed an amended petition asserting the following ground

for relief:

> GROUND 5: Petitioner's right to a fair trial was violated by the State's Attorney "Scioto County Ohio Prosecutor" misconduct, and prohibited due process provision of the Fourteenth amendment of the United States Constitution.


## III. GROUND ONE IS PROCEDURALLY DEFAULTED AND WAIVED

In recognition of the equal obligation of the state courts to protect the constitutional

rights

of criminal defendants and in order to prevent needless friction between the state and federal

courts, a state criminal defendant with federal constitutional claims is required fairly to present

those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c).  If he

fails to do so, but still has an avenue open to him by which he may present the claims, his

petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459

U.S. 4, 6 (1982)(*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  If, because of a

procedural default, the petitioner can no longer present his claims to a state court, he has also

waived them for purposes of federal habeas review unless he can demonstrate cause for the

procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v.*

*Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v.*

*Sykes*, 433 U.S. 72, 87 (1977).

Federal courts may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  The "cause and prejudice" analysis of the test also applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).  In determining whether a state court rested its holding on a procedural default so as to bar federal habeas review, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000), citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).

Petitioner's first ground for relief asserts that the trial court violated his constitutional rights when it permitted the introduction of "irrelevant and immaterial 'other acts' evidence as propensity and character evidence."  Respondent contends this claim is procedurally defaulted for two reasons: 1) it is procedurally defaulted due to waiver because in his direct appeal, petitioner argued this claim as a matter of state law only, and did not raise it as a federal Constitutional claim; and 2) petitioner failed to file a timely appeal to the Ohio Supreme Court, and his motion for delayed appeal was denied.  Petitioner concedes that this claim was argued as a matter of state law only on his direct appeal and he states he "forfeit[s] and abandon[s]" this first ground for relief. (Doc. 18 at 9).  While petitioner then proceeds to challenge the second reason raised by respondent, his concession as to first reason ends the inquiry for this Court and the Court finds petitioner procedurally defaulted his first ground for relief.

Because petitioner has procedurally-defaulted his first ground for relief, this Court concludes that he has waived the cognizable, constitutional claim alleged in Ground One of the petition unless he can show cause for the default and actual prejudice as a result of the alleged error, or demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice."  *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not demonstrated a fundamental miscarriage of justice will occur if his procedurally-defaulted claim for relief is not addressed on the merits by this Court.  Moreover, he has failed to establish "cause" for his procedural default in the state courts.  To the extent petitioner intimates his appellate counsel's ineffectiveness constitutes "cause" for his procedural default in failing to raise the constitutional issue on direct appeal (Doc. 18 at 13), his contention

is without merit.  The ineffective assistance of counsel may constitute cause for a procedural

default, so long as such claim has been presented to the state courts, and is not itself procedurally

defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000), citing *Murray,* 477 U.S. at 488-

89.  In petitioner's Application for Reopening Appeal pursuant to Appellate Rule 26(B) in the

Fourth District Court of Appeals, petitioner challenged trial counsel's alleged failure to object at

trial to "other acts" evidence and appellate counsel's failure to raise this same issue on direct

appeal. (Doc. 8, Exh. 15 at 5-6)  Petitioner did not contend that appellate counsel was

ineffective because he failed to raise the "other acts" evidentiary claim as a constitutional issue

on direct appeal.  His arguments before the Ohio court of appeals were directed solely at trial

counsel's alleged failure to object at trial, and the court's ruling on the Application to Reopening

was limited to such issue. (Doc. 8, Exh. 16 at 4-5)  Petitioner never properly presented to the

state courts the claim that appellate counsel was constitutionally ineffective for failing to raise

the constitutional issues on direct appeal, and he is therefore precluded from asserting this claim

as cause for his procedural default.  *See Edwards*, 529 U.S. at 452.  Accordingly, Ground One of

the petition should be dismissed due to petitioner's failure to establish cause and prejudice for

his procedural default.


## IV.  GROUND THREE IS WITHOUT MERIT

Ground Three of the petition alleges that petitioner's convictions for complicity to one

count of aggravated burglary and two counts of kidnapping with a firearm specification were not

supported by sufficient evidence in violation of the Due Process Clause.  Respondent contends,

and the Court agrees, that this claim is procedurally defaulted because petitioner failed to perfect

9

a timely appeal to the Ohio Supreme Court.  While petitioner subsequently filed a motion for delayed appeal in the Ohio Supreme Court, his motion was denied.  The denial of the motion for delayed appeal by the Ohio Supreme Court is an adequate and independent ground on which to base a procedural default. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir.) (*per curiam*), *cert. denied,* 543 U.S. 989 (2004).

As cause for his default, petitioner argues that once he turned over his appeal to prison officials it was out of his control and delays by the prison mailroom staff resulted in his appeal to the Ohio Supreme Court being one day late.  "Cause" must be something external to the petitioner and the defense that prevented petitioner's compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003).  In *Maples*, the Sixth Circuit held that the prison mailroom officials' inaction, which resulted in the pro se petitioner's application for leave to appeal being one day late, constituted cause to excuse the procedural default.  While observing that the prison mailbox rule set forth in *Houston v. Lack,* 487 U.S. 266 (1988), is not binding on the state of Michigan, the Court stated:

> Where a pro se prisoner attempts to deliver his petition for mailing in sufficient time for it to arrive timely in the normal course of events, however, the rule is sufficient to excuse a procedural default based upon a late filing.  If the prison had accepted and mailed Maples's petition when he first attempted to deliver it--five days before the state's deadline-- we have no doubt that it would have been timely delivered in the normal course of events.  Maples has therefore shown cause to excuse his procedural default.

340 F.3d at 439.

Likewise, in the instant case, petitioner was proceeding pro se on appeal to the Ohio Supreme Court.  He handed his appeal documents over to the mailroom staff at Ross Correctional Institution on June 29, 2001, seven days before the July 5, 2001 deadline, along

10

with a cash slip for postage fees. (Doc. 18, Exh. A).  Unbeknownst to the mailroom staff,

certified mail rates increased by $.20 and the return of petitioner's appeal for additional postage

ultimately resulted in his appeal arriving at the Ohio Supreme Court one day late. (Doc. 18,

Exhs. B, C).  Following the reasoning in *Maples*, this Court finds petitioner has shown cause for

the procedural default in this matter.

The prejudice resulting from the delayed receipt of petitioner's appeal to the Ohio

Supreme Court is that court's refusal to consider his claim that there was insufficient evidence to

sustain his convictions. *Maples,* 340 F.3d at 439.  Therefore, the Court must examine the merits

of petitioner's Third Ground for relief.

Petitioner claims there was constitutionally insufficient evidence to sustain his

conviction.  In overruling his third assignment of error, the state appellate court hearing

petitioner's direct appeal made the following findings regarding his claim of insufficient

evidence to convict:

> In his third assignment of error, appellant argues that the court erred in
> denying his motion to acquit at the completion of the state's case. . . .  A Crim. R.
> 29(A) motion for acquittal tests the sufficiency of the evidence presented at trial.
> See State v. Williams (1996), 74 Ohio St.3d 569, 576; State v. Miley (1996), 114
> Ohio App.3d 738, 742. Crim. R. 29(A) allows a trial court to enter a judgment of
> acquittal when the state's evidence is insufficient to sustain a conviction. The trial
> court may not grant a defendant's Crim. R. 29(A) motion, however, "if the
> evidence is such that reasonable minds can reach different conclusions as to
> whether each material element of a crime has been proved beyond a reasonable
> doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. In making this
> determination, the trial court must construe the evidence in a light most favorable
> to the prosecution. Id. at 263. An appellate court undertakes de novo review of
> the trial court's decision on a Crim. R. 29(A) motion and will not reverse the trial
> court's judgment unless reasonable minds could only reach the conclusion that
> the evidence failed to prove all the elements of the crime beyond a reasonable
> doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus;
> see, also, Miley, supra, at 742. If any rational trier of fact could have found the
> essential elements of an offense proven beyond a reasonable doubt, the appellate

11

court will not disturb a conviction. <u>Williams</u>, <u>supra</u>, at 576; <u>Jenks</u>, <u>supra</u>, at 273.

First, appellant argues that the evidence is insufficient to establish that he engaged in complicity to commit aggravated burglary. He submits that there was "no testimony that there was a purpose to commit any criminal offense in the house." However, in the next sentence he admits that the only reason the co-conspirators entered the house was to kidnap the Stevenses.

R.C. 2911.11 states:
> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:
> * * *
> (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.
> (B) Whoever violates this section is guilty of aggravated burglary, a felony of the first degree.

Appellant seems to be arguing that because nothing was stolen from the Stevenses' home when they were kidnapped, appellant cannot be convicted of complicity to aggravated burglary. One need not commit a crime involving theft to be guilty of aggravated burglary under the current version of R.C. 2911.11; one need only enter an occupied dwelling with the purpose of committing any criminal offense.

The evidence shows that Sharon Crowder, Chuck Crowder and Randy Clausing entered the Stevenses' residence by force and deception, while in possession of two deadly weapons, for the purpose of kidnapping Jim and Annette Stevens. It is irrelevant that nothing was stolen from the home at the time the Stevenses were kidnapped as theft is not a specific element of aggravated burglary.

Appellant also argues that his only connection with the Stevenses' kidnapping was "conversation" about it. He submits that he was not present when the victims were kidnapped and the testimony establishes that the decision to kidnap the Stevenses that day was made only because Chuck Crowder learned that the victims would be out boating with appellant and his wife. Appellant submits that he never took such an affirmative action that he can be found guilty of complicity to commit these crimes.

In <u>State v. Mootispaw</u> (1996), 110 Ohio App.3d 566, 570, we noted that mere presence at the scene of a crime is insufficient to allow a case to proceed to

12

a jury. The state must establish that appellant took some affirmative action to "assist, encourage, or participate in the crime by some act, deed, word, or gesture." Id.

Despite appellant's contentions, mere "conversation" can be sufficient to establish complicity to commit a crime in some circumstances. There is some evidence to show that these "conversations" appellant engaged in were to plan the kidnapping of the Stevenses with the goal of stealing a large sum of money appellant believed the victims possessed.

Furthermore, there is evidence that appellant did more than merely discuss the kidnapping with his accomplices. Randy Clausing testified that appellant came to his residence while the Stevenses were being held and kicked Jim Stevens, apparently in an attempt to coerce Mr. Stevens into revealing the location of the money.

In sum, there is sufficient evidence, based on the testimony of the state's witnesses, to show that appellant informed Chuck Crowder, Randy Clausing, and others that he was a friend of the Stevenses and that they had large sums of money. There is also evidence that, at various times, appellant and others attempted to find the money on the Stevenses' property. When they were unsuccessful, they decided to kidnap the Stevenses and force them to reveal the location of the money. According to the state's witnesses, appellant provided Chuck Crowder and the others with various information, including the habits of the victims and their plans on the day of the kidnapping, which would allow them to successfully implement their plan.

There was sufficient evidence for a rational finder of fact to conclude that appellant was guilty of complicity to burglary and complicity to kidnapping beyond a reasonable doubt. The trial court correctly submitted this case to a jury and did not err in denying appellant's motion for judgment of acquittal. Therefore, we overrule appellant's third assignment of error.

(Doc. 8, Exh. 13 at pp. 14-19, footnote omitted).

The factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). In addition, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to clearly established law or was based on an unreasonable

determination of the facts of record. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110

Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim

adjudicated on the merits in state court unless the adjudication either:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrases "contrary to" and "unreasonable application" have

independent meanings:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted). Upon review of the entire record, this

Court concludes that petitioner has failed to establish that the findings of the state appellate court

are unreasonable as to justify federal habeas corpus relief. *See Williams v. Taylor*, 529 U.S. 362

(2000).

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal

case from conviction except upon proof beyond a reasonable doubt of every fact necessary to

constitute the crime with which he or she is charged. *Jackson v. Virginia*, 443 U.S. 307, 316

(1979); *In re Winship,* 397 U.S. 358, 364 (1970). In analyzing claims of insufficient evidence,

the Court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).  This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318-319.  On habeas corpus review, the Court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003)(citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Id*.  In addition, circumstantial evidence may be sufficient to support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. *See Jackson,* 443 U.S. at 326; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *Jamison v. Collins,* 100 F. Supp.2d 647, 705 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002).  Therefore, the question for this Court is whether the Ohio Court of Appeals' application of the "no rational trier of fact" test, as articulated in *Jackson* and adopted as a matter of Ohio law in *State v. Jenks*, 61 Ohio St.3d 259 (1991), was contrary to or an unreasonable application of that test to the facts of this case.

Petitioner does not dispute the factual findings of the state appellate court.  He argues, however, that the evidence shows he "was not supportive or involved in the conspiracy by his own termination, as repeatedly supported throughout the trial transcripts" and cites to specific portions of the transcript in support of his argument. (Doc. 18 at 18).  Upon review of the entire record, this Court does not agree.  When viewing all of the evidence in the light most favorable

to the prosecution, *see Jackson v. Virginia, supra*, and for the reasons discussed by the state appellate court, this Court likewise concludes that the evidence was constitutionally sufficient to sustain petitioner's convictions on complicity to aggravated burglary and complicity to kidnapping with a firearm specification.  Therefore, Ground Three of the petition is without merit.


## V.  GROUND TWO IS PROCEDURALLY DEFAULTED AND WAIVED AND GROUND FOUR IS WITHOUT MERIT

Ground Two of the petition asserts that the trial court erred by giving a complicity instruction that did not state petitioner acted with the kind of culpability required for the offense. Ground Four of the petition asserts that trial counsel was ineffective by failing to object to the complicity instruction given by the trial court.  Since both claims ultimately turn on the issue of ineffectiveness of trial counsel, the Court shall address these claims together.

Petitioner asserts the trial court's jury instructions failed to include a proper charge on culpability and on the affirmative defense of renunciation.  To the extent petitioner claims he is entitled to relief because the trial court committed error or otherwise abused its discretion under state law governing the jury instructions, he raises issues of state law only that are not cognizable in this federal habeas corpus proceeding.  A jury instruction which violates only state law cannot provide a basis for habeas corpus relief. *Wood v. Marshall*, 790 F.2d 548, 551 (6th Cir. 1986), *cert. denied*, 479 U.S. 1036 (1987), citing *Gryger v. Burke*, 334 U.S. 728, 731 (1948).  *See also Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). In a habeas proceeding, allegedly improper jury instructions must be shown to have infected the accused's trial to such a degree as to constitute a clear violation of due process. *Wood*, 790 F.2d

16

at 551.  To warrant habeas relief, jury instructions must have been "so infirm that they rendered the entire trial fundamentally unfair." *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998).

To the extent petitioner claims the jury instructions violated his due process rights, he has procedurally defaulted this claim by failing to raise it on direct appeal.  Thus, the Court cannot consider this claim in this habeas corpus proceeding unless petitioner can show cause for the default and prejudice resulting therefrom.

In this regard, petitioner alleges his trial counsel erred by failing to object to the trial court's instruction on complicity which, according to petitioner, failed to include a proper charge on culpability, and by failing to request an instruction on the affirmative defense of renunciation. This is essentially petitioner's Fourth Ground for relief.  Therefore, the Court must consider the merits of this claim in determining "cause" for the procedural default of Ground Two.

Ineffective assistance of appellate counsel may constitute cause for a procedural default. *Murray,* 477 U.S. at 488; *Gravley v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996).  To demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground.  *Id*. at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *See id.* at 688.  Judicial scrutiny of counsel's performance must be highly

17

deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id*. at 689.  In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *See id*.

In order to satisfy the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id*. at 694.  A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *Id*. at 693.  However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice.  *See id*.  Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *Id*. at 695.  *See also Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003); *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).

"A claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Deitz v. Money*, 391 F.3d 804, 809 (6th Cir. 2004), *citing Edwards v. Carpenter*, 529 U.S. 446, 452 (2000).  In this case, petitioner filed an application to reopen his direct appeal under Appellate Rule 26(B) with the Ohio Court of Appeals arguing, inter alia, that the trial court erred by failing to give appropriate jury instructions, that his trial counsel failed to object to these purported errors, and that his appellate counsel, who was also trial counsel, failed to raise these errors. (Doc 8, Exh. 16 at 3).  The Ohio Court of Appeals recognized the controlling United States

18

Supreme Court precedent of *Strickland v. Washington,* and noted that if the jury instructions were not erroneous, counsel had no duty to object and thus the failure to object could not possibly prejudice the appellant. (Doc. 8, Exh. 16 at 6).  The Ohio Court of Appeals stated:

> The appellant contends the jury instruction[s] failed to include a proper charge on culpability.  The State chose to charge the appellant in terms of the principal offenses of aggravated burglary and kidnapping.  Therefore, the appellant could be convicted of complicity and charged in terms of the principal offense if the State proved beyond a reasonable doubt that appellant aided, abetted, or conspired with the principal offenders.  R.C. 2923.03.  State v. Coleman (1988), 37 Ohio St. 3d 286, 525 N.E. 2d 792, paragraph two of the syllabus.  However, the jury instructions must still state that each element must be proven beyond a reasonable doubt.  Id.

> The trial court instructed the jury that "the defendant must be acquitted unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the offenses charged in the indictment."  In addition, the trial court stated that "if after a full and impartial consideration of all the evidence you are firmly convinced of the truth of the charge, the State has proved its case beyond a reasonable doubt.  If you are not firmly convinced of the truth of the charges, you must find the defendant not guilty."  The trial court also went through each of the charged offenses in detail outlining each of the elements that the State needed to prove beyond a reasonable doubt.  Included in these instructions was the mens rea element.

> While it is preferable, it is not necessary for the trial court to use the magic words "a complicity conviction must be supported by the same showing of culpability as the principal offense."  The jury instructions are proper, if viewed as a whole, they clearly indicate that the same culpability is required.  Coleman, 37 Ohio St.3d at 290, 525 N.E.2d at 796-97.  It is clear that the jury instructions taken as a whole correctly apprised the jury of their duty to return a guilty verdict only after they were convinced that the state had proven all elements, including mens rea, beyond a reasonable doubt.

> *  *  *

> Lastly, the appellant places a great deal of weight on the fact that he allegedly told John Wooten, a witness at trial, that he "was not to [sic] keen on that idea" when the discussion turned to kidnapping instead of only burglary.  The appellant contends that this evidence is sufficient to require a jury instruction for the affirmative defense of renunciation mentioned in R.C. 2923.03(E).  R.C. 2923.03(E) states: "It is an affirmative defense to a charge under this section that,

19

prior to the commission of or attempt to commit the offense, the actor terminated his complicity, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

The defense of renunciation available in R.C. 2923.03(E) is an affirmative defense. Affirmative defenses are governed by the principles addressed in R.C. 2901.05. The Ohio Supreme Court stated that in a criminal case "[t]he proper standard for determining * * * whether a defendant has successfully raised an affirmative defense under R.C. 2901.05 is to inquire whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." State v. Melchior (1978), 56 Ohio St.2d 15, 10 O.O.3d 8, 381 N.E.2d 195, paragraph one of the syllabus. At least two other courts of appeal have stated that renunciation of criminal intent must be unequivocal before a jury instruction on renunciation is warranted. See State v. Brumley (Mar. 19, 1996), Portage App. No. 89-P-2092 and 89-P-2099, unreported; State v. Washington (May 31, 1991), Lucas App. No. L-90-199, unreported. To say that the appellant "was not to [sic] keen on the idea" is clearly insufficient to establish a complete renunciation of criminal intent. Therefore, counsel's failure to request this jury instruction cannot be viewed as deficient.

(Doc. 8, Exh. 16 at 6-10).

Based on its own review of the record, this Court agrees with the state court of appeals in its determination that the jury instructions given were correct, and thus counsel was not deficient in failing to object to the instructions or in failing to request an instruction on renunciation. The complicity statute states in pertinent part that "[a] charge of complicity may be stated in terms of this section, *or in terms of the principal offense*." Ohio Rev. Code § 2923.03(F) (emphasis added). The trial court reviewed each of the charged offenses in detail and outlined each element of the offenses, including the *mens rea* element, the State needed to prove beyond a reasonable doubt. (Doc. 9, Tr. 437-444). In addition, the evidence adduced at trial did not support "a complete and voluntary renunciation of [petitioner's] criminal purpose" warranting an instruction on the affirmative defense of renunciation. Petitioner has not shown that a "reasonable probability" exists that, but for his counsel's alleged errors, the result of the criminal

20

trial and appeal would have been different. Thus, petitioner was not prejudiced by his counsel's alleged errors. Petitioner has failed to demonstrate to this Court that the court of appeals' decision was in any way an unreasonable application of the Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668, 687 (1984), or an unreasonable determination of the facts on the basis of the record evidence. Since the jury instructions were not incorrect, counsel was not deficient in failing to object to such instructions or in failing to request an instruction on the affirmative defense of renunciation. The Court concludes it was not an unreasonable application of federal law for the Ohio Court of Appeals to find no violation of petitioner's Sixth Amendment rights. As petitioner has failed to establish his claim of ineffectiveness of trial and appellate counsel, he has failed to establish his Fourth Ground for relief and failed to show cause for the procedural default of his Second Ground for relief.

Moreover, petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his procedurally-defaulted claims for relief are not addressed on the merits by this Court. Petitioner has not shown that he is actually innocent of the crimes of which he was convicted. Accordingly, the undersigned concludes that petitioner is not entitled to habeas corpus relief on Grounds Two and Four.


## VI. GROUND FIVE IS BARRED BY THE STATUTE OF LIMITATIONS

Ground Five of the petition asserts petitioner's right to a fair trial was violated by the State prosecutor's misconduct in violation of his due process rights under the Fourteenth Amendment of the United States Constitution. The facts in support of this claim are as follows:

> During opening statements, the prosecutor, after warning the jury that this case
> has got violence and sex and torture and drugs and everything that you can

21

possibly imagine (sic).  Then the Prosecutor proceeded to speak on the irrelevant murder and disappearance of Danny Trailer, from 1989 and mentioning "petitioner" O'Donnell's name in the same category.

(Doc. 26 at 1).

On August 19, 2004, this Court granted petitioner's motion to amend the habeas petition to add Ground Five over the objections of respondent that such claim was barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d), as amended by § 101 of the AEDPA, and did not relate back to the claims alleged in petitioner's original timely-filed petition under Fed. R. Civ. P. 15(c). (Doc. 25).  The undersigned noted that although the original petition was timely filed, petitioner filed his motion for leave to file the amended petition nearly nine months after the expiration of the applicable one-year statute of limitations set forth in 28 U.S.C. § 2244(d). Therefore, the issue of whether petitioner's proposed amendment should be permitted turned on whether and how the standards enunciated in Fed. R. Civ. P. 15 should apply to this collateral review proceeding.

In making its determination, the undersigned recognized that a split had developed among the federal circuit courts in determining whether a new claim asserted in an amended petition "arose out of the conduct, transaction, or occurrence" set forth in the original petition within the meaning of Federal Rule 15 and that neither the Supreme Court nor the Sixth Circuit had taken a definitive position on this issue. (Doc. 25 at 3-5).  Given the split in the circuits and the absence of sufficient guidance from the Sixth Circuit and the Supreme Court, and out of an abundance of caution, the undersigned was unwilling to risk the possibility of piecemeal litigation by prohibiting petitioner's proposed amendment at that time.  Conceding that the question was close as to whether petitioner should be granted leave at such a late juncture in the

22

proceedings to amend his petition to add a totally new ground for relief, the Court granted the

motion to amend, stating, "In so ruling, the Court expresses no opinion as to whether or not, as

the law in the area continues to develop, respondent ultimately may prevail on the argument that

petitioner's fifth ground for relief is subject to dismissal on statute of limitations grounds." (Doc.

25 at 6).

The Supreme Court has now resolved the split in the circuits and in so doing compels this

Court to reconsider its previous decision.  In *Mayle v. Felix*, 125 S.Ct. 2562 (2005), the Supreme

Court held that under Federal Rule of Civil Procedure 15, new and otherwise time-barred claims

presented in a motion to amend the petition will relate back to the filing of the initial federal

habeas corpus petition "[s]o long as the original and amended petitions state claims that are tied

to a common core of operative facts." *Id.* at 2574.  An amendment to a habeas corpus petition

does not relate back to the original petition if it "asserts a new ground for relief supported by

facts that differ in both time and type from those the original pleading set forth." *Id*. at 2566.  In

*Mayle*, the petitioner's amended petition, which challenged his statements in a pretrial

interrogation, did not arise out of the "conduct, transaction, or occurrence" set forth in his

original timely filed petition, and therefore did not "relate back" to the date of the original

petition, which targeted the admission of videotaped testimony of a prosecutorial witness in his

murder trial.   The Supreme Court rejected the petitioner's argument that a claim related back

"so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence."

*Mayle*, 125 S.Ct. at 2570.  The Supreme Court reasoned that such an expansive definition of

"conduct, transaction, or occurrence" was too broad, as "virtually any new claim . . . will relate

back, for federal habeas claims, by their very nature, challenge the constitutionality of a

conviction or sentence, and commonly attack proceedings anterior thereto." *Id*.  In order for the claims in an amended motion to relate back, the Court held that they must be of the same "time and type" as those in the original motion, such that they arise from the same core set of operative facts. *Id*. at 2566, 2571, 2574.

Petitioner here, like the petitioner in *Mayle*, argues that the trial itself is the "transaction" or "occurrence" that satisfies Rule 15.  Similar to the petitioner in *Mayle*, this argument cannot succeed.  The claim alleged in Ground Five of the amended petition is not tied to a "common core of operative facts" that would make relation back proper.  Petitioner's original petition challenges the admission of "other acts" evidence at the trial, the jury instructions, the sufficiency of the evidence, and the effectiveness of his trial counsel.  The amended claim challenges alleged prosecutorial misconduct which occurred during the trial's opening statements.  The facts alleged in the original claim were not such that they would put respondent on notice that prosecutorial misconduct was at issue.  The claim set forth in the amended petition and those set forth in the original petition are not similar enough to satisfy the "time and type" test, nor do they arise out of the same set of operative facts.  Therefore, petitioner's claim of prosecutorial misconduct does not relate back to the claims contained in the original motion and is barred by the statute of limitations.

Although the statute of limitations may be equitably tolled in limited circumstances, *Dunlap v. United States,* 250 F.3d 1001, 1008 (6th Cir.), *cert. denied*, 534 U.S. 1057 (2001); *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988), petitioner has not argued that equitable tolling is applicable to this case.  Moreover, there is no evidence in the record that even remotely suggests petitioner lacked notice or constructive knowledge of the filing requirement for federal

habeas petitions or that he has been diligent in pursuing his rights.  Therefore, equitable tolling is inappropriate in this case.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Grounds One through Four) (Docs. 1) be DENIED with prejudice, and petitioner's amended petition for writ of habeas corpus (Ground Five) (Doc. 26) be DISMISSED with prejudice as time-barred under 28 U.S.C. § 2244(d).

2.  A certificate of appealability should not issue with respect to Grounds One and Two of the petition, which this Court has concluded are waived and thus barred from review on procedural grounds, and to Ground Five, which this Court has concluded is barred by the statute of limitations, because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the *Slack* standard.[3]  In addition, a certificate of appealability should not issue with respect to the claims alleged in Grounds Three and Four of the petition, which were addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY

---

[3]Because this Court finds petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim.  *See Slack,* 529 U.S. at 484.

petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity.

*See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  2/10/2006                                     s/Timothy S. Hogan                          

                  KI                                       Timothy S. Hogan
                                                    United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROBERT WALTER O'DONNELL,
    Petitioner,                                Civil Action No. 1:03-cv-828

    vs.

PAT HURLEY, WARDEN,
    Respondent.

                                         (Beckwith, J.; Hogan, M.J.)

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254.  Any party may object to the Magistrate Judge's Report and Recommendation within **FIFTEEN (15) DAYS** of the filing date of this R&R.  Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s)  Any response by an opposing party to the written objections shall be filed within **TEN (10) DAYS** after the opposing party has been served with the objections.  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

27

1:03cv 828 Doc. 35

| **SENDER:** *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br><br>X | ☐ Agent<br>☐ Addressee |
| | B. Received by *(Printed Name)* | C. Date of Delivery |
| 1. Article Addressed to:<br><br>Robert Walter O'Donnell<br>393227<br>Ross Corr. Institution<br>PO Box 7010<br>Chillicothe, Ohio 45601 | D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below: ☐ No | |
| | 3. Service Type<br>☑ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D. | |
| | 4. Restricted Delivery? *(Extra Fee)*        ☐ Yes | |
| 2. Article Number<br>   (Transfer from service label) | 7001 2510 0008 6348 2436 | |

PS Form 3811, August 2001          Domestic Return Receipt          102595-02-M-1540